United States District Court
Southern District of Texas
FILED
OCT 1 2 2010
David J. Bradley, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **SECOND DECIMAL, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. __________________** |
| | § | |
| **DYNAMIC TAX SOLUTIONS, INC., and BRENT WALKER** | § | |
| | § | |
| | § | |
| **Defendants.** | § | **Jury Trial Requested** |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT
AND INJUNCTIVE RELIEF**

Plaintiff Second Decimal, LLC, ("Second Decimal") files this Complaint against Defendants Dynamic Tax Solutions, Inc. ("DTS"), and Brent Walker ("Walker"), and alleges as follows:

**INTRODUCTION**

This lawsuit arises out of Defendant Dynamic Tax Solutions, Inc.'s, and its Chief Technology Officer, Brent Walker's (collectively, "Defendants") misuse and misappropriation of Second Decimal's valuable and proprietary confidential information. Second Decimal designs, develops, and sells sales and use tax software, known as STSCorporate and PinPoint. In that capacity, Second Decimal and its predecessors expended significant amounts of time and money acquiring and developing a software code base to support these proprietary products (the "Code"), numerous versions of which have been registered with the United States Copyright Office. True and correct copies of these registrations are attached hereto as Exhibit A.

Walker, a former employee of Second Decimal's predecessors-in-interest, was paid hundreds of thousands of dollars for helping to develop the Code. Walker, through and in

conjunction with DTS, the company that he co-founded in August 2009 and for which he currently works, offers a substantially similar, competing transaction tax service purportedly using "proprietary technology." Based on DTS's description of its software, Walker's involvement, and the apparent rapid development of its software, Walker clearly misappropriated the Code to create, market, and sell services using a product that is essentially identical to the Code.

Defendants have recently begun soliciting the same customers as Second Decimal. Defendants' conduct has caused harm to Second Decimal's business, and has given rise to the claims in this Complaint, including copyright infringement, misappropriation of trade secrets, unfair competition, and unjust enrichment.

## I. PARTIES

1. Plaintiff Second Decimal, LLC is a Delaware limited liability company with its principal place of business in Boston, Massachusetts.

2. Defendant Dynamic Tax Solutions, Inc., is a Georgia corporation with its principal place of business at 12600 Deerfield Parkway, Suite 100, Alpharetta, Georgia 30004, and a regional office at 4801 Woodway Drive, Suite 300 East, Houston, Texas 77056. DTS has no registered agent in Texas and can be served through the Texas Secretary of State.

3. Defendant Brent Walker is a resident of Alpharetta, Georgia, and may be served with process at 12600 Deerfield Parkway, Suite 100, Alpharetta, Georgia 30004; at 4801 Woodway Drive, Suite 300 East, Houston, Texas 77056; or wherever he may be found.

## II.
## JURISDICTION AND VENUE

4. This action arises under the laws of Texas and under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

5. Defendants Dynamic Tax Solutions, Inc. and its Chief Technology Officer, Brent Walker, operate a regional office in Houston, Texas, transact business within the State of Texas, and, upon information and belief, have committed acts, or substantial portions of acts, of copyright infringement and trade secret misappropriation within the State of Texas and within the Southern District of Texas. Defendants are, therefore, subject to the personal jurisdiction of this Court.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(a), as it is the judicial district in which DTS maintains an office, is subject to personal jurisdiction, where a substantial part of the events giving rise to the claims occurred, and where either of the Defendants or their agents may be found.

## III.
## FACTUAL BACKGROUND

7. Second Decimal designs, develops, and sells sales and use tax software, known as STSCorporate and PinPoint. Second Decimal and its predecessors-in-interest, Burr Wolff, LP and Ryan, Inc., have expended significant amounts of time and money acquiring and developing a software code base to support these proprietary products (the "Code"), versions of which have been registered with the United States Copyright Office.

8. Second Decimal has registered four versions of software derived from the STSCorporate code base, including two versions that were completed while Walker was employed with Burr Wolff and/or Ryan.

9. STSCorporate Version 2.1.3, completed in 2002, was duly registered on April 16, 2010. A true and correct copy of the Certificate of Registration received from the United States Copyright Office is attached in Exhibit A. Version 2.1.3 was coded in PowerBuilder and PowerScript programming languages.

10. STSCorporate Version 4.0.1, completed in 2007, was duly registered on April 16, 2010. A true and correct copy of the Certificate of Registration received from the United States Copyright Office is attached in Exhibit A. Version 4.0.1 was coded in Java and contained much of the same logic that existed in the earlier PowerBuilder versions.

11. Walker had access to, and was familiar with, one or more versions of the STSCorporate software ("the Copyrighted Work"). Upon information and belief, Walker derived the Infringing Software from, or the Infringing Software is an exact copy of, the Copyrighted Work.

12. Second Decimal acquired the rights in the Copyrighted Work from Ryan, Inc., which acquired right in the Copyrighted Work from Burr Wolff, L.P. These rights included all intellectual property rights associated with the STSCorporate software, including all copyrights.

13. In mid-1999, Burr Wolff hired Brent Walker to lead Burr Wolff's newly formed STSCorporate team in Houston, Texas.

14. Over the next several years, Walker and the other employees of Burr Wolff STSCorporate team developed, revised and otherwise improved the STSCorporate software.

15. In late 2006, Burr Wolff sold the STSCorporate Tax Technology business unit to Ryan, Inc. ("Ryan") (previously Ryan & Company, Inc.). Having purchased this unit and other Burr Wolff assets, Ryan acquired full intellectual property rights in the STS Corporate software. Before the sale, Walker left Burr Wolff.

16. After Ryan purchased the Burr Wolff assets, Walker joined Ryan as an employee. On November 30, 2006, Walker executed an "Employee Agreement" acknowledging that he would be provided confidential information and trade secrets, and agreeing to not disclose any of Ryan's confidential information, including, but not limited to tax saving and mitigation strategies, internal procedures, and computer programs.

17. On or around June 1, 2007, Walker resigned from Ryan. Immediately before his resignation, Walker had access to one or more versions of the STSCorporate software.

18. In May 2009, Ryan announced the spin off of its enterprise software products, including its STSCorporate software, into Plaintiff Second Decimal, LLC, a separate and independent company. Second Decimal acquired and currently maintains full intellectual property rights, including all copyright, in the STSCorporate software.

19. During his time employed with Burr Wolf and then Ryan, Walker provided input on, designed, and approved updates to the logic flow of the STSCorporate software. He was intimately familiar with the inner workings of the STSCorporate software, having had a hand in virtually every aspect of its design before leaving Ryan.

20. After leaving Ryan, Walker co-founded Dynamic Tax Solutions, Inc. in August 2009. DTS recently created a software solution called "Tax Manager 1" or "TM1" (the "Infringing Software"). The Infringing Software is strikingly similar to STSCorporate software, such as the process flow, suspending transactions when no tax rule is available, customized

reporting, and the use of substantially similar terminology to describe the Infringing Software. These similarities, combined with Walker's involvement with DTS and DTS's sudden and apparent rapid development of the Infringing Product, strongly suggest that DTS has misappropriated, and is infringing Second Decimal's copyright in, the STSCorporate software.

21. DTS does not sell copies of the Infringing Software to the public. Instead, DTS requires clients/customers to send it data files, which are then operated upon by the Infringing Software in-house at DTS offices. As a result, there are no commercially available copies of the Infringing Software.

22. Despite receiving warnings from Second Decimal, DTS and Walker have openly flaunted their misappropriation of Second Decimal's valuable intellectual property, are currently operating in the same geographic markets as Second Decimal, and have begun actively soliciting some of Second Decimal's target customers by offering its service utilizing the Infringing Software as a substitute for Second Decimal's proprietary products.

## IV.
## CAUSES OF ACTION

### COUNT 1: COPYRIGHT INFRINGEMENT

23. Second Decimal incorporates paragraphs 1-22 as though fully set forth herein.

24. Second Decimal is the owner of the Copyrighted Works.

25. The Copyrighted Works are original works of authorship that may be copyrighted under United States law, and have been duly registered with the Copyright Office. A copy of the Certificate of Registration for each of the Copyrighted Works is attached in Exhibit A.

26. By virtue of his relationship and position with Second Decimal, Walker had access to the Copyrighted Works and/or portions thereof.

27. During the time of the unlawful infringement, Ryan and/or Second Decimal have remained the sole owners of the copyright in the Copyrighted Works.

28. Without permission, license, or consent of Ryan or Second Decimal, Defendants have violated and continue to violate Second Decimal's exclusive copyrights, pursuant to 17 U.S.C. § 106, in the Copyrighted Works by reproducing and/or creating derivatives of the Copyrighted Works.

29. Defendants' reproduction and/or use of its derivative of the Copyrighted Works, namely the Infringing Software, infringes Second Decimal's copyrights.

30. Defendants continue to infringe the Second Decimal's copyright, including by continuing to use and copy the Infringing Software.

31. Defendants' violation of Second Decimal's exclusive rights in its copyright constitutes infringement, and is an unlawful violation of the Copyright Act, 17 U.S.C. § 501.

32. Defendants' infringement was and continues to be willful.

**COUNT 2: MISAPPROPRIATION OF TRADE SECRETS**

33. Plaintiff incorporates paragraphs 1-32 as though fully set forth herein.

34. Because of his position as lead of the STSCorporate team, Walker had access to a substantial amount of trade secret and proprietary information (the "Proprietary Information"), including but not limited to the Code. He occupied this position of extreme sensitivity within Ryan.

35. The Proprietary Information is not known outside of Ryan and Second Decimal, the successor-in-interest to the Proprietary Information. Because this information is valuable to Second Decimal and its competitors, measures must be taken to ensure that such information remains confidential.

36. The Proprietary Information is the result of substantial effort by Ryan and Second Decimal, and would take a competitor years to develop. Specifically, the misappropriated computer programs took thousands of employees' hours and substantial investment dollars to develop and test.

37. Walker has used the Proprietary Information to compete against Second Decimal. If not enjoined, Walker will continue to eradicate the value of the Proprietary Information.

38. Walker wrongfully stole, copied, took, and otherwise misappropriated certain Proprietary Information.

39. Walker took the Proprietary Information for the benefit of his personal competitive venture, DTS, and/or for his own self-interest. Furthermore, DTS has accepted and used the Proprietary Information for its own economic benefit and profit. Among other uses, DTS exploits the Proprietary Information by offering services using the Infringing Software, which appears to be substantially similar to the STSCorporate software.

40. Neither Ryan nor Second Decimal has authorized the use and/or disclosure of the Proprietary Information by Defendants.

41. Second Decimal has suffered irreparable harm and injury as a result of Defendants' misappropriation and/or use of the Proprietary Information for which there is no adequate remedy at law. Defendants are actively soliciting customers who are customers or potential customers of Second Decimal.

42. Additionally, as a proximate cause of Defendants' misappropriation and/or use of the Proprietary Information, Second Decimal has suffered substantial damages within the jurisdictional limits of this Court.

**COUNT 3: UNJUST ENRICHMENT**

43. Plaintiff incorporates paragraphs 1-42 as though fully set forth herein.

44. The Proprietary Information is the exclusive confidential, proprietary, and trade secret information of Second Decimal.

45. However, Defendants have had the benefit of using such Proprietary Information and have been unjustly enriched by the use of such Proprietary Information. Second Decimal seeks a disgorgement of all amounts by which Defendants have been unjustly enriched.

## V.
## DAMAGES/EXEMPLARY DAMAGES

46. Plaintiff incorporates paragraphs 1-45 as though fully set forth herein.

47. As a result of the aforementioned conduct of one or both of the Defendants, Second Decimal has suffered both general and special damages, including, but not limited to: (1) lost profits; (2) lost business opportunities; and (3) lost licensing and royalty fees.

48. Second Decimal is entitled to all remedies available under the Copyright Act, including the Defendants' profits and statutory damages.

49. One or both Defendants' aforementioned conduct was committed with malice, and therefore Second Decimal is entitled to exemplary damages to punish and deter such future violations of the law in an amount to be determined at trial.

50. One or both Defendants' aforementioned conduct constituted acts of infringement with the knowledge that the copied software was subject to a valid United States copyright and with the knowledge that Defendants had no authority to copy such copyrighted work. Defendants' infringement was thus "willful" within the meaning of 17 U.S.C. § 504(c)(2).

51. In addition, Second Decimal is entitled to attorneys' fees and prejudgment and post-judgment interest at the maximum rate permitted by law and to recover costs of court.

## VI.

**INJUNCTIVE RELIEF**

52. Plaintiff incorporates paragraphs 1-51 as though fully set forth herein.

53. Monetary relief alone is not adequate to fully address the irreparable injury that Defendants' illegal actions have caused and will continue to cause Second Decimal if not enjoined. Second Decimal is, therefore, entitled to permanent injunctive relief to stop Defendants' ongoing infringement of Second Decimal's copyrights pursuant to 17 U.S.C. § 502, and to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503.

**VII.**
**JURY DEMAND**

54. Second Decimal requests a jury trial of all issues in this action so triable.

**VIII.**
**PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Second Decimal, LLC, respectfully requests the following relief:

1. Defendants be cited to appear and answer herein;

2. Second Decimal be awarded judgment against Defendants for all of its compensatory damages, be they general, special, statutory, or otherwise, as described herein;

3. Second Decimal be awarded judgment against Defendants for exemplary damages or enhanced damages as a result of the willful and bad faith acts of Defendants;

4. Second Decimal recover its reasonable and necessary attorneys' fees, together with conditional awards of attorneys' fees in the event of appeal(s);

5. Second Decimal recover pre-judgment interest on the sums awarded at the highest rate allowed by law from the date of demand to the date of judgment;

6. Second Decimal recover post-judgment interest on the sums awarded at the highest rate allowed by law from the date of judgment until the date the judgment is satisfied;

7. Second Decimal recover all costs of suit;

8. Second Decimal recover its losses, and Defendants' profit flowing from the acts of infringement;

9. The Court issue an order enjoining Defendant from using the Infringing Software and any other software that infringes the Copyrighted Works;

10. The Court issue an order requiring Defendants to turn over to Second Decimal all data relating to, or resulting from the infringing acts;

11. The Court issue an order requiring the destruction of all products and code that infringe Second Decimal's exclusive rights of copyright in the Copyrighted Works, together with the destruction of all sales, marketing or promotional materials used for the distribution and/or sale of the infringing product(s);

12. Under the authority of 17 U.S.C. § 504, the court issue an order requiring Defendants to account to Second Decimal for damages; and

13. Second Decimal recover such other and further relief, at law or in equity, to which it may be justly entitled.

DATED: October 8, 2010

Respectfully submitted,

By: [signature]

**G. Michael Gruber**
Texas State Bar No. 08555400
mgruber@ghjhlaw.com
**John F. Martin**
Texas State Bar No. 24002530
jmartin@ghjhlaw.com
**Demarron Berkley**
Texas State Bar No. 24050287
dberkley@ghjhlaw.com

**GRUBER HURST JOHANSEN & HAIL LLP**
1445 Ross Ave., Suite 2500
Dallas, Texas 75202
Telephone: 214.855.6800
Facsimile: 214.855.6808

**ATTORNEYS FOR PLAINTIFF SECOND DECIMAL, LLC**